UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **CORRINE ALLEN,**<br>Plaintiff,<br>vs.<br>**HENRY FORD HEALTH SYSTEMS,**<br>Defendant. | **2:25-CV-11584-TGB-CI**<br>HON. TERRENCE G. BERG<br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT (ECF NO. 14)** |

In this employment discrimination lawsuit, Plaintiff Corrine Allen alleges that her former employer, Defendant Henry Ford Health Systems ("HFHS") failed to grant her a reasonable accommodation for her disability and terminated her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. Now before the Court is Defendant HFHS's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), or in the Alternative, for Summary Judgment Pursuant to Fed. R. Civ. P. 56(a), asserting that Allen (1) failed to timely file this lawsuit within 90 days of her receipt of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC"), and (2) failed to exhaust her administrative remedies because she failed to timely file a charge of discrimination with the EEOC. ECF No. 14. The motion has been fully briefed. ECF Nos. 15, 18. Upon review of the parties' filings, the Court concludes oral argument will not aid in the resolution of this

matter. Accordingly, the Court will resolve the present motion on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, HFHS's motion will be **GRANTED**.

## I. BACKGROUND

Allen worked for HFHS as a Registered Nurse from 1976 until her termination on March 12, 2022. Am. Compl. ¶¶ 8–9, ECF No. 10. Allen alleges that she suffers from sleep apnea and that on March 10, 2021, she had surgery at HFHS to have an INSPIRE® device implanted to address that condition. *Id.* ¶¶ 6, 10. HFHS approved Allen for a medical leave of absence following the surgery, and that leave was later extended. *Id.* ¶¶ 12, 15. Allen returned to work in a "transition to work program" in October 2021, but was "advised" by her medical team "to once again take medical leave on November 30, 2021, and to obtain a neuropsychological evaluation." *Id.* ¶¶ 16, 18.

On February 7, 2022, HFHS sent Allen a "'Termination Letter,' alleging that she violated HFHS's Leave of Absence Policy," which allowed for a one year of a medical leave of absence (which Allen began on March 10, 2021), and that she "would be terminated on March 12, 2022 if she did not return to work by March 10, 2021 [sic]." *Id.* ¶ 19; Termination Letter, ECF No. 15-5, PageID.310. The letter stated that "[i]n the absence of any changed circumstances or any need for additional accommodations your employment will terminate with Henry Ford Health System effective **3/12/2022**." Termination Letter, ECF No. 15-5,

PageID.310 (emphasis in original); Am. Compl ¶ 20, ECF No. 10. Allen states that she applied for an open telemetry nurse position at HFHS on March 8, 2022, and that she was qualified for the position and could have performed it without accommodation. Am. Compl. ¶¶ 21–22, ECF No. 10. Allen also reached out to HFHS to extend the time for consideration of the telemetry position, but HFHS terminated her on March 12, 2022 without addressing her request to be placed in the open telemetry position. *Id.* ¶¶ 24–25.

Allen asserts that she "created an electronic inquiry" with the EEOC on January 3, 2023 and "submitted her allegations of disability discrimination/failure to accommodate" against HFHS. Allen contends that this inquiry is "reasonably construed to request agency action and appropriate relief so as to constitute a charge [of discrimination]." *Id.* ¶¶ 26–27; Inquiry, ECF No. 15-5, PageID.309. Allen attaches to her Amended Complaint a letter from the EEOC to Robert Farr, an attorney representing HFHS, dated August 16, 2024, stating:

> [Allen] has filed a charge of employment discrimination against your organization. EEOC received a timely inquiry from the Charging Party but was not able to process it until this time. Nonetheless, as this delay was not the fault of the Charging Party, EEOC will process this charge."

ECF No. 10-1, PageID.142. Allen contends that this is a "tolling letter" affirming "that [the EEOC] received a timely inquiry from Allen." Am. Compl. ¶ 29, ECF No. 10.

Allen states she was interviewed by an EEOC investigator "on January 5, 2025 [sic]," and that on January 11, 2023, the EEOC issued a Notification & Acknowledgement of Dual-Filed Charge. Declaration of Corrine Allen ¶¶ 5–6, ECF No. 19; EEOC Charge, ECF No. 14-3. The Notification states that "[t]his is notice that a charge of employment discrimination … was initially received … on January 11, 2023 and will be dual-filed with the Michigan Department of Civil Rights." ECF No. 14-3, PageID.196. The Charge of Discrimination alleges disability discrimination with the "earliest" and "latest" dates of discrimination as March 12, 2022. ECF No. 15-5, PageID.367.

The EEOC issued a Conciliation Failure of Charge and Notice of Right to Sue letter to Allen on February 21, 2025. ECF No. 14-4. The EEOC's Activity Log shows that on February 21, 2025, at 16:05:50, a "Closure Notice/NRTS (Closure Notice-NRTS 471-2023-01519.pdf)" was uploaded to the EEOC portal and released to the parties by the EEOC, and that the EEOC emailed Allen that a new document was available to download. ECF No. 18-2, PageID.517. The Activity Log further provides that on the same day, at 19:32:09 EST "[t]he Charging Party has Downloaded Document: Type: Closure Notice/NRTS, FileName: Closure Notice-NRTS 471-2023-01519.pdf." *Id.*

Confirming in part these facts, Allen avers that "in late February 2025," she "received an email stating that there was something for [her] in the [EEOC] portal," and that an EEOC investigator had informed her

"during the time" that the "conciliation" process had failed. Allen Decl. ¶ 12, ECF No. 19. Allen contends that she "went to the portal and attempted to decrypt the file, but it would not open." *Id.* ¶ 13. She asserts she "received another notification about a week or two later from the EEOC stating that the document was still waiting," and that she "contacted the EEOC explaining that [she] could not open documents due to the portal's technical problems," but "received no response." *Id.* ¶¶ 14–15. Then, "[o]n March 1 or 2, 2025, [she] went back into the portal and again attempted to decrypt the file, but the document would not open." *Id.* ¶ 17. However, "another notice popped up on the screen," and when she "clicked on that icon, the notice did appear." *Id.* She contends that she therefore received the Notice of Right to Sue from the EEOC, at the earliest, on or about March 1, 2025. *Id.* ¶ 18.

Allen filed this lawsuit against HFHS on May 29, 2025, ECF No. 1, and filed an Amended Complaint on August 21, 2025. ECF No. 10. Allen asserts one claim against HFHS for disability discrimination/failure to accommodate in violation of the ADA. *Id.* PageID.137–38. She alleges that HFHS discriminated against her on the basis of her disability when it denied her an appropriate and reasonable accommodation, and she seeks monetary damages, equitable relief, and attorney's fees and costs. *Id.* PageID.138.

On October 9, 2025, HFHS filed a motion to dismiss Allen's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the

alternative, for summary judgment pursuant to Fed. R. Civ. P. 56(a). ECF No. 14. HFHS argues that Allen failed to timely file this lawsuit within 90 days of her receipt of the February 21, 2025 Notice of Right to Sue letter from the EEOC, and that she failed to exhaust her administrative remedies because she did not timely file a charge with the EEOC within 300 days of the alleged discrimination. *Id.*

Allen filed a response in opposition to HFHS's motion, supported in part by her unsworn declaration, an April 28, 2025 letter from her attorney to HFHS, and the EEOC file. ECF Nos. 15, 15-3 to 15-5. Allen later submitted a second identical declaration but this time stating "I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge." ECF No. 19. Allen argues that HFHS's motion is premature and fails to accept Allen's well pleaded facts as true, and that there is, at a minimum, a dispute of fact regarding when she filed her Charge with the EEOC and when she received the Notice of Right to Sue from the EEOC. *Id.*

HFHS filed a reply brief in support of its motion. ECF No. 18.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

The Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When assessing a motion to dismiss

under Rule 12(b)(6), the Court must give the plaintiff the benefit of the doubt and must accept all the complaint's factual allegations as true. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). But the Court will not presume the truth of any legal conclusions stated in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the pleaded facts do not raise a right to relief, the Court must grant the motion to dismiss. *Winnett v. Caterpillar*, *Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

In reviewing a motion to dismiss, the court may consider "any exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

**B. Federal Rule of Civil Procedure 56(a)**

The Federal Rules of Civil Procedure provide that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). That is, the non-moving party must provide specific facts to rebut or cast doubt on the moving party's proffered facts.

Summary judgment must be entered against a party who fails to establish the existence of an element essential to that party's case on "which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23.

## III. DISCUSSION

### A. Timeliness of Allen's Complaint

"[T]o bring a lawsuit pursuant to the ADA, a plaintiff must (1) timely file a charge of employment discrimination with the EEOC, and (2) receive and act upon the EEOC's notice of the 'right to sue' letter." *Laboy-Cardona v. Easter Seals Mich.*, No. 23-cv-10960, 2023 WL 8190692, at *3 (E.D. Mich. Nov. 27, 2023) (Drain, J.) (citing *Granderson v. Univ. of Mich.*, 211 F. App'x 398, 400 (6th Cir. 2006)). Specifically, a

plaintiff seeking relief under the ADA must file their suit within 90 days after receipt of their right-to-sue letter. *Id.* (citing *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 322 (6th Cir. 2012) (noting that "[t]he ADA explicitly cross references and adopts Title VII's enforcement section, including 'powers, remedies and procedures.'")); 42 U.S.C. § 2000e-5(f)(1). "[A] notice of final action is 'received' when the agency delivers its notice to a claimant or the claimant's attorney, whichever comes first." *Rembisz v. Lew*, 830 F.3d 681, 683 (6th Cir. 2016) (citation modified) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990)); *see Paniconi v. Abington Hospital-Jefferson Health*, 604 F. Supp. 3d 290, 291 (E.D. Pa. 2022) ("[T]he time for the filing of a complaint begins to run when the plaintiff has notice of the EEOC's decision, which usually occurs on the date he receives a right-to-sue letter from the agency.").

"The Sixth Circuit does not require 'actual receipt of notice by a claimant before the time period begins to run.'" *Peterson v. Hopson*, No. 17-2891, 2018 WL 3524635, at *3 (W.D. Tenn. Jan. 17, 2018) (quoting *Hunter v. Stephenson Roofing, Inc.*, 790 F.2d 472, 474 (6th Cir. 1986)). Instead, the Sixth Circuit has made clear that constructive notice is enough to hold a party responsible for failing to meet the ninety-day deadline. *See Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 558 (6th Cir. 2000) (holding that the plaintiff constructively received notice of the right-to-sue letter when "the letter

carrier deposited the first of two official notifications at the plaintiff's last known official address which advised that a certified letter awaited her at the nearby postal station," not when she asserts she later "took personal possession" of the letter). "The ninety-day period applies to all plaintiffs, even those proceeding pro se, and so much as one day's delay is fatal to a claim. This statutory limit is strictly enforced ...." *Peterson*, 2018 WL 3524635, at *3 (punctuation modified).

HFHS argues that Allen failed to timely file her Complaint within 90 days of receipt of the right-to-sue letter informing her of the dismissal of her EEOC charge. HFHS states that the EEOC issued the right-to-sue letter on February 21, 2025. ECF No. 14, PageID.167. This was the date that the right-to-sue letter was uploaded to the EEOC portal and released to the parties by the EEOC, and that the EEOC emailed Allen that a new document was available to download. ECF No. 18-2, PageID.517. HFHS contends that Allen's deadline for filing her ADA claim therefore was May 22, 2025—90 days from receipt of the right-to-sue letter. *Id.* Allen does not dispute that the EEOC issued the right-to-sue letter on February 21, 2025. ECF No. 15, PageID.261. She contends however that she did not actually open the letter until March 1 or 2, 2022, and thus the May 29, 2025 filing of her Complaint was timely. *Id.* 264–65.[1]

---

[1] Because both parties have presented argument about and relied on evidence outside the pleadings, such as Allen's declaration, Farr's declaration, Allen's counsel's April 28, 2025 letter, and the EEO Activity Log, the Court will treat HFHS's motion as a motion for summary

The EEOC's Activity Log, which the EEOC produced in response to a FOIA request by HFHS, *see* ECF No. 18-2, shows that on February 21, 2025: (1) the EEOC uploaded the "Closure Notice/NRTS" (the Right-to-Sue Letter) to its portal, (2) the EEOC emailed Allen advising her that a "new document is available to download," and (3) "[t]he Charging Party [Allen] has Downloaded" the "Closure Notice/NRTS document" from the portal a few hours later that same day. ECF No. 18-2, PageID.517–18. Allen similarly avers that (1) "in late February," a "week or two" before "March 1 or 2, 2025 [sic]," she "received an email [from the EEOC] stating that there was something for me in the portal," (2) she "was told by the investigator that the 'conciliation' process had failed," and (3) she "went to the portal and attempted to decrypt the file, but it would not open." Allen Decl. ¶¶ 12–15, ECF No. 19. Allen asserts that when she again accessed the EEOC portal on March 1 or 2, 2025, she was able to "click" on a "notice [that] popped up on the screen" and the right-to-sue notice

---

judgment instead of a Rule 12(b)(6) motion to dismiss. *See* Fed. R. Civ. P. 12(d); *Wilkes v. Nat'l Credit Union Admin. Bd.*, No. 15-CV-11389, 2015 WL 7889049, at *1 n. 1 (E.D. Mich. Dec. 4, 2015) (Steeh, J.) (stating that the Sixth Circuit explained that there is no surprise when a district court converts a motion to dismiss into a motion for summary judgment if "(a) both sides submit extrinsic material as exhibits to their pleadings, (b) the parties had the opportunity to respond to arguments and exhibits that were submitted by the other side, and (c) the parties had the opportunity to fully address all arguments for dismissal.") (citing *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health and Welfare Tr. Fund*, 203 F.3d 926, 931–32 (6th Cir. 2000)).

then appeared. *Id.* ¶ 17. The EEOC Activity Log, however, shows that February 21, 2025 was the *last* date Allen downloaded a document from the portal. *See* ECF No. 19, PageID.517.

The resolution of this motion turns on what constitutes "receipt" of the EEOC's notice of final action. "[A] notice of final action," such as a right-to-sue letter, "is 'received' when the [agency] delivers its notice to a claimant or the claimant's attorney, whichever comes first." *Rembisz*, 830 F.3d at 683. As explained above, the Sixth Circuit does *not* require "actual receipt of notice by a claimant before the time period begins to run." *See Hunter*, 790 F.2d at 474. Rather, *constructive* notice has been held to be sufficient. *Graham-Humphreys,* 209 F.3d at 558 (6th Cir. 2000) (delivery of notification to plaintiff's address of receipt of certified mail—not actual receipt by plaintiff—held to be constructive notice). In *Graham-Humphreys*, the Sixth Circuit pointed out that "[t]he Civil Rights Act of 1964, Title VII, posits that, if the EEOC has elected not to prosecute a citizen's employment discrimination charge, it shall notify the petitioner of his or her right to initiate a private enforcement lawsuit. '[W]ithin *ninety days after the* ***giving*** *of such notice* a civil action may be brought against the respondent named in the charge. 42 U.S.C. § 2000e–5(f)(1) (emphases added)." *Id.* at 557.

In recent years, the EEOC has transitioned to electronic communications to deliver right-to-sue notices, and the EEOC regulations expressly permit notice through electronic means. *See* 29

C.F.R. § 1601.3(b) ("For the purposes of this part, the terms file, serve, submit, receive, transmit, present, send, issue, and notify shall include all forms of digital transmission."). As one court explained:

> The EEOC gives a complaining party access to an online portal. When new correspondence or case information is uploaded, including the notice of right to sue letter, the complaining party is simultaneously notified by e-mail that a new document is ready to view and download. This means there are time-stamped and automated records of when something is uploaded, an e-mail is sent, and when any document on the portal is downloaded by either party. These EEOC records can be retrieved by anyone through a Freedom of Information Act Request.

*Jackson v. Alachua Cnty. Bd. of Cnty. Comm'rs*, No. 1:24-CV-101-MW-MAF, 2026 WL 719516, at *2 (N.D. Fla. Feb. 26, 2026), *report and recommendation adopted*, 2026 WL 715786 (N.D. Fla. Mar. 13, 2026), *appeal filed*, No. 26-11192 (11th Cir. Apr. 10, 2026). Thus, "transmission of a communication to an electronic portal, coupled with notice that the portal contains a communication, is sufficient to constitute 'receipt' in the computer age." *See Alfredo v. MBM Fabricating Co.*, No. 23-cv-10526, 2024 WL 1334305, at *3 (E.D. Mich. Mar. 28, 2024) (Goldsmith, J.); *see also Beeler v. Union Pac. R.R. Co.*, No. 22 C 136, 2024 WL 4225958, at *11 (N.D. Ill. Sept. 18, 2024) (collecting cases holding that an employee's *electronic receipt* of notification of their right to sue notice, *not when they actually open the letter*, triggers the 90-day limitations period).

Courts in this District and others within the Sixth Circuit, as well as the Seventh, Eighth, and Tenth Circuits, and other district courts around the country, have consistently held that, in the electronic context, the 90-day clock begins to run when the letter is made available to the plaintiff via the EEOC portal or by email notice. *See, e.g.*, *Alfredo*, 2024 WL 1334305, at *4 ("[T]he weight of authorities supports" the conclusion that "a plaintiff is deemed to have received a right-to-sue letter when the letter is made accessible via the EEOC portal.") (collecting cases); *Gray v. Shelby Cnty. Bd. of Educ.*, No. 23-cv-2810, 2024 WL 5515752, at *9 (W.D. Tenn. Dec. 9, 2024) (stating "a plaintiff is deemed to have received a right-to-sue letter when that letter is made accessible via the EEOC portal," not when they open the document); *Pinnock v. Teletech Gov't Sols., LLC*, No. 25-1285, 2026 WL 1970544, at *3–4 (10th Cir. July 8, 2026) (holding the filing period began "when Pinnock received the EEOC's email with her NRTS" as documented in the EEOC's public portal); *Kinder v. Marion Cnty. Prosecutor's Off.*, 132 F.4th 1005, 1008 (7th Cir. 2025) (holding that where there is a lag between when a plaintiff receives the EEOC email alerting him about the right-to-sue letter and when plaintiff opens the right-to-sue letter, the 90-day clock begins when plaintiff received the notice, stating "[i]t is "irrelevant that the plaintiff was unable—rather than simply unwilling—to read the notice on the day he received it."); *McDonald v. St. Louis Univ.*, 109 F.4th 1068, 1071 (8th Cir. 2024) ("In our view, McDonald received notice of her right to sue on

May 10 when the EEOC first emailed her lawyer the link to her right-to-sue letter in the Public Portal."); *Lax v. Mayorkas*, 20 F.4th 1178, 1182 (7th Cir. 2021) ("We hold that Lax's filing window … commenced when he received the email, not when he opened the attachment."); *Williams v. River Region Psychiatry Assocs., LLC*, No. 2:25-cv-876, 2026 WL 712611, at *2 (M.D. Ala. Jan. 21, 2026) ("While the Eleventh Circuit has not addressed when an EEOC email communication is presumed received, district courts within the Eleventh Circuit have concluded that the email is received—and the 90-day filing deadline begins to run—on the day the email is sent.") (collecting cases); *Bautista v. Charles Schwab & Co., Inc.*, No. 23-cv-01779, 2025 WL 2576504, at *3 (D. Colo. Sept. 4, 2025) (holding that "the latest date of 'receipt' would be March 17, 2023, when Plaintiff downloaded the Right to Sue Notice. That Plaintiff allegedly did not view or read the document until March 20, 2023 cannot save her claims from being time-barred."); *Penson-Johnson v. UF Health Shands Hosp.*, No. 1:24-cv-176, 2025 WL 1517807, at *2 (N.D. Fla. May 28, 2025) (dismissing case as untimely after finding plaintiff received notice of the right-to-sue letter when the EEOC sent her an email "telling her a new document was available on the portal," not when she opened the email two days later and retrieved the notice because "a rule that notice occurs only when a plaintiff chooses to check her mail (or email) would allow a plaintiff to unilaterally extend her own filing deadline"); *Mason v. Derryfield Sch.*, No. 22-cv-104-SE, 2022 WL 16859666, at *3 (D.N.H. Nov.

7, 2022) (holding that the 90-day period begins on the date a plaintiff receives the EEOC's email, "even if [they] did not access the Right-to-Sue Letter through the portal"). *Accord Asuncion v. Hegseth*, 150 F.4th 1252, 1259 (9th Cir. 2025) (holding the 90-day filing period for purposes of the Rehabilitation Act commenced when the plaintiff "could realistically be held responsible for having access to the [final agency decision]" after "the agency made numerous errors when transmitting the passphrase necessary to decrypt the [final agency decision]"); *Garcia-Gesualdo v. Honeywell Aerospace of P.R., Inc.*, 135 F.4th 10, 13–14, 17–19 (1st Cir. 2025) (holding 90-day filing period for purposes of Title VII and ADA commenced when the EEOC emailed plaintiff's attorney the NRTS, not when the attorney received two emails with a hyperlink to the EEOC's public portal, which was malfunctioning, because the emails failed to provide the required notice of the final agency decision and the 90-day filing period).

A decision from a court in the Seventh Circuit, *McCladdie El v. United Airlines, Inc.*, No. 24-cv-4385, 2025 WL 2084228 (N.D. Ill. July 24, 2025), is instructive. In *McCladdie El*, the EEOC's activity log documented that on September 14, 2023: (1) the right-to-sue letter was uploaded, (2) the EEOC emailed McCladdie El to let him know "a new document [was] available to download," and (3) McCladdie El downloaded his right-to-sue letter. *Id.* at *2. McCladdie El nevertheless claimed that, due to a computer crash, he was unable to retrieve or review

the EEOC letter until approximately two weeks later. *Id.* at *3. The district judge found that McCladdie El's 90-clock began when he accessed and downloaded his EEOC right-to-sue letter on September 14, 2023, and "it is immaterial that he was unable to open or review the file." *Id.* at *3.

Similarly, the evidence here demonstrates that on February 21, 2025, the EEOC uploaded the "Closure Notice/NRTS" to its portal, emailed Allen advising her that a "new document is available to download," and that Allen downloaded the "Closure Notice/NRTS" from the portal a few hours later that same day. ECF No. 18-2, PageID.517–18. Consistent with that evidence, Allen avers that "in late February," a "week or two" before "March 1 or 2, 2025 [sic]," she "received an email [from the EEOC] stating that there was something for me in the portal," that she "was told by the investigator that the 'conciliation' process had failed," and that she "went to the portal and attempted to decrypt the file, but it would not open." Allen Decl. ¶¶ 12–15, ECF No. 19. Allen asserts that she was able to retrieve and read the right-to-sue letter on March 1 or 2, 2025. *Id.* ¶ 17. The EEOC Activity Log, however, shows that February 21, 2025 was the *last* date Allen downloaded, or "retrieved," a document from the portal, and that no document was downloaded on March 1 or 2, 2025. *See* ECF No. 18-2, PageID.517. Moreover, Allen's contention in any event that she was first able to *open* the document on March 1 or 2, 2025 does not dispute her acknowledgement that she *received notice* of the letter on February 21, 2025.

Under these authorities, Allen's 90-day clock began to run on February 21, 2025, when she at a minimum received constructive notice of the right-to-sue letter, and therefore her Complaint was due within 90 days of that date, or on or before May 22, 2025. Allen's contentions that she had problems opening the letter, or that she first read the document on March 1 or 2, 2025, do not constitute proof to rebut the fact that she "received" the right-to-sue letter on February 21, 2025—whether she successfully opened and read it or not. *See Rembisz*, 590 F. App'x at 504 (explaining that although the plaintiff's allegation in his complaint of the date on which he received a right-to-sue letter was sufficient to defeat a motion to dismiss, the plaintiff, when challenged upon a motion for summary judgment, must come forward with evidence that rebuts the presumption that the mailed notice was received by the plaintiff or his counsel within the five day period); *Fuller v. Mich. Dep't of Transp.*, 580 F. App'x 416, 425 (6th Cir. 2014) (plaintiff's "vague deposition testimony [standing alone] does not provide the kind of proof to overcome" the presumption of receipt of notice); *Azeez v. Cocaine & Alcohol Awareness Program, Inc.*, No. 2:24-cv-02434, 2026 WL 2230602, at *5–6 (W.D. Tenn. Aug. 3, 2026) (holding plaintiff's testimony that she did not open the portal and review the right-to-sue letter until that day after the notice was released and she was informed by email that "a new document [was] available to download" in the portal was insufficient to rebut the presumption of receipt of notice on the date of the document upload and

email to plaintiff); *Nascimben v. Feld Ent., Inc.*, No. 8:24-CV-98, 2025 WL 1283117, at *5 (M.D. Fla. May 2, 2025) (finding self-serving testimony about non-receipt of emails alone insufficient to rebut the presumption of timely mailing and notice). Allen's May 29, 2025 Complaint therefore was untimely. *See Farajolah v. Victory Auto. Grp., Inc.*, No. 1:20-cv-01277, 2021 WL 5752972, at * 2 (W.D. Tenn. Dec. 1, 2021) (holding that plaintiff received constructive receipt of his right-to-sue letter when the EEOC activity log shows that he downloaded the letter, even though he "had not yet received a physical copy"), *report and recommendation adopted*, 2021 WL 5750437 (W.D. Tenn. Dec. 2, 2021).

Allen argues in her Response that the Court should find that she is entitled to equitable tolling of the 90-day limitations period, in light of her reported difficulties accessing the right-to-sue letter. ECF No. 15, PageID.272–73. She asserts that she was proceeding pro se before the EEOC, is 67 years old, and has a neurocognitive disorder. *Id.* After she retained counsel, her counsel reached out to HFHS to "request a dialogue." *Id.* She contends there is no prejudice to HFHS because they were "well aware that Allen intended to pursue litigation." *Id.*

HFHS responds that Allen is not entitled to equitable tolling, and the law supports their position. Equitable tolling is "sparingly bestow[ed]." *Graham-Humphreys*, 209 F.3d at 560. "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's

control." *Id.* at 560–61. And "[a]bsent compelling equitable considerations, a court should not extend limitations by even a single day." *Id.* at 561. It is Allen's burden to present evidence establishing equitable tolling. *See Zappone v. United States*, 870 F.3d 551, 556 (6th Cir. 2017) ("A litigant 'carr[ies] the burden of establishing [his] entitlement to equitable tolling.'") (quoting *Jackson v. United States*, 751 F.3d 712, 718–19 (6th Cir. 2014)).

"Historically, this court has considered five factors in evaluating whether to apply equitable tolling to a late claim ...: '(1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.'" *Zappone*, 870 F.3d at 556 (quoting *Jackson*, 751 F.3d at 719). However, "the five factors are neither comprehensive nor material in all cases." *Id.* (citing *Graham-Humphreys*, 209 F.3d at 560–61).

Allen's arguments in support of her claim that equitable tolling should apply are not persuasive. The evidence shows that the EEOC issued the right-to-sue letter to Allen on February 21, 2025, emailed Allen that the document was available for download, and Allen downloaded the letter that same day. ECF No. 18-2, PageID.517. Consistently, Allen testified that on or about that same date, she received

the email from the EEOC notifying her a document was available for download, and that she spoke with an EEOC investigator who informed her that conciliation had failed. Allen Decl. ¶ 12, ECF No. 19. Allen therefore had either actual or certainly constructive notice of the 90-day filing requirement on February 21, 2025. Accepting Allen's testimony that she was first able to open and view the notice on March 1 or 2, there was still ample time to file a complaint within the 90-day period. Allen simply was not diligent in pursuing her rights, as she had at least 81 or 82 days to file this suit after her acknowledged actual receipt of the right-to-sue letter on March 1 or 2. *See Graham-Humphreys*, 209 F.3d at 561 (denying equitable tolling because "[t]he claimant had abundant time (74 days) following the EEOC's … actual release to her of the RTS notice in which to institute her court action prior to the … expiration of limitations.") Further, Allen was represented by counsel, who acknowledged that the right-to-sue letter was issued by the EEOC on February 21, 2025, well in advance of the expiration of the 90-day period. *See Kinder*, 132 F.4th at 1009 (plaintiff not entitled to equitable tolling when his counsel "had three weeks after reading the right-to-sue letter … to timely file Kinder's claim" and thus plaintiff "d[id] not show the 'exercise [of] due diligence in preserving' legal rights necessary to warrant equitable tolling."); *McCladdie El*, 2025 WL 2084228, at *4 (equitable tolling not appropriate because "[plaintiff's] alleged computer issue surfaced and dissipated, leaving plenty of time for him to proceed

with diligence and timely file his complaint"); *McDonald*, 109 F.4th at 1072 ("And more importantly, when the EEOC sent the right-to-sue letter as an email attachment on June 28—the day that McDonald says she 'actually received' notice of her right to sue—she still had 41 days to timely file. Her lawyer's lack of diligence 'militate[s] mightily against any claim for equitable tolling.'") (citation omitted).

As the Sixth Circuit recognized, plaintiffs dealing with the EEOC "ha[ve] a manifest common sense obligation to exercise ordinary diligence in prosecuting [their] claim." *Graham-Humphreys*, 209 F.3d at 558 n.11. Allowing the timeline to run from the date the plaintiff states she opened a document "would illicitly license [an employment discrimination] claimant to indefinitely extend limitations by avoiding acceptance of [a right-to-sue] notice, thereby circumventing the Congressional mandate that private [employment discrimination] lawsuits should be initiated within ninety days of the EEOC's 'giving' of official authorization to sue." *Id.* at 560 (citing 42 U.S.C. § 2000e-5(f)(1)).

For these reasons, Allen's ADA claim is time barred and therefore HFHS is entitled to summary judgment on Allen's ADA claim.

**B. Exhaustion of Administrative Remedies**

HFHS further argues that Allen failed to exhaust her administrative remedies by failing to timely file a charge with the EEOC. ECF No. 14, PageID.168–72. HFHS asserts that Allen was notified on February 7, 2022 in a "Termination Letter" that her employment would

be terminated on March 12, 2022, and that she therefore was required to file her charge with the EEOC within 300 days of the date of that "Termination Letter," or on or before Monday, December 5, 2022. HFHS states that Allen, however, contends that she filed her charge with the EEOC on January 3, 2023 when she submitted an "inquiry" to the EEOC (330 days after the she was informed of her termination), and her EEOC Charge of Discrimination was dated January 11, 2023 (338 days after she was informed of her termination), both well past the December 5, 2022 date. HFHS thus argues that Allen failed to timely exhaust her administrative remedies.

Allen responds that her Complaint is "premised upon decisions" made by HFHS "not to extend her time to find a new position, not to place her into the telemetry position as an accommodation, and to terminate her," which she contends "were made after March 9, 2022 and on March 12, 2022." Allen asserts that she filed an EEOC charge on January 3, 2023 (when she submitted an "inquiry" to the EEOC), which is within 300 days of the March 9 and 12, 2022, dates for those decisions. ECF No. 15, PageID.275.[2]

[2] The Court takes note that Allen's January 3, 2023 "inquiry" letter to the EEOC, which she asserts constitutes a "charge of discrimination," fails to mention that she had applied for a position or assert any allegations of failure to accommodate, and instead only complains of Allen's March 12, 2022 termination. The "inquiry" letter states that Allen is "sending this note due to the urgency to file" and that she "need[s] to file a charge." ECF No. 15-5, PageID.309. Allen's subsequently signed

Under the ADA, a claim for discrimination can proceed in federal district court only after administrative remedies are exhausted. 42 U.S.C. § 12117(a) (incorporating Title VII procedural requirements into the ADA); 42 U.S.C. § 2000e-5(e)(1); *Jones v. Nat. Essentials, Inc.*, 740 F. App'x 489, 492–93 (6th Cir. 2018). "It is well settled that a plaintiff must satisfy two prerequisites before filing a Title VII [and ADA] action in federal court: (1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue." *Granderson*, 211 F. App'x at 400. In Michigan, a plaintiff is required to file an EEOC charge within 300 days after the alleged discrimination. *Pemberton v. Bell's Brewery, Inc.*, 150 F.4th 751, 766 (6th Cir. 2025), *cert. denied*, — S.Ct. —, No. 25-6798, 2026 WL 640855 (June 8, 2026). The EEOC charge "shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e-5(b). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b); *Williams v. CSX Transp. Co.*, 643 F.3d 502, 508 (6th Cir. 2011).

Determining the timeliness of Allen's EEOC complaint, and this lawsuit, requires the Court to identify precisely the unlawful

Charge of Discrimination is dated January 11, 2023, more than 300 days after her termination and any alleged denial of accommodation. *Id.* PageID.367.

employment practices of which she complains. *Delaware State Coll. v. Ricks*, 449 U.S. 250, 257 (1980). Allen complains in her Response that, after HFHS sent the "Termination Letter" to her, it failed to respond to her request for an extension of time to find a new position and her request to be placed in the telemetry position, and instead terminated her, and that these decisions were made "after March 9, 2022 and on March 12, 2022," when her employment was terminated. *See* ECF No. 15, PageID.275. When applying the statute of limitations to a plaintiff's wrongful termination action, courts have held that the cause of action accrues when the plaintiff *receives notice* that her employment is being terminated, regardless of when her employment is *actually* terminated. *See Chardon v. Fernandez,* 454 U.S. 6, 8 (1981) (holding that "the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful") (emphasis in original) (citing *Delaware State Coll.,* 449 U.S. at 258); *Janikowski v. Bendix Corp.,* 823 F.2d 945, 947 (6th Cir.1987) (holding the cause of action for wrongful termination accrued under the Age Discrimination in Employment Act when the employee received notice of termination, not when his employment was formally terminated). This gauge of the accrual of the cause of action applies even when an employer leaves open the possibility that the employee will continue working for the company in a different position. *Janikowski*, 823 F.2d at 947.

It is undisputed that Allen was notified on February 7, 2022, in a "Termination Letter" that she would be terminated on March 12, 2022 for violating HFHS's Leave of Absence Policy. ECF No. 15-5, PageID.310. Accordingly, Allen was required to file a charge of discrimination on or before December 4, 2022. This is because December 4, 2022 is 300 days after February 7, 2022, the date of the Termination Letter. There is no dispute that Allen did not file a charge of discrimination on or before December 4, 2022. She therefore failed to exhaust her administrative remedies with respect to her discharge.

Allen also complains that, after receiving the "Termination Letter," she sought "additional accommodations," but that HFHS failed to extend the time for her to look for new position and to place her in the telemetry position. ECF No. 15, PageID.280. She contends that her claims accrued "on March 12, 2022 at the earliest," when her request for an extension "was effectively denied." *Id.* PageID.281. Generally, where an employee claims that the employer refused to accommodate a disability, the 300-day limitations period runs from the date of the employer's initial denial for a request for accommodation. *Delaware State Coll.*, 449 U.S. at 257–58. However, in this case, HFHS made the decision to terminate Allen's employment on February 7, 2022, and its subsequent failure to extend the time period to allow Allen to look for other positions or to retain Allen in another position prior to the final termination date "are merely delayed, but intended consequences" of the initial termination decision.

*See Taylor v. AutoAlliance Int'l, Inc.*, No. 08-CV-11318, 2009 WL 2591533, at *5 (E.D. Mich. Aug. 24, 2009) (Hood, J.) (finding that "Plaintiff's characterization of the February 28, 2007 refusal to reinstate her as a discrete discriminatory act is an attempt to circumvent the appropriate limitations period" and that "Defendant's subsequent denial to accommodate the Plaintiff after the February 28, 2007 denial amounted to nothing more than a reiteration of its earlier denial"); *Shepard v. Ohio N. Univ.*, No. 3:24-CV-1734, 2025 WL 2521140, at *10 (N.D. Ohio Sept. 2, 2025) (finding plaintiff "sustained no 'new' injury" when he was again denied an accommodation, but instead "remained in the same 'injured' position he had been in every day" since the initial decision); *see also Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1410 (11th Cir. 1998) ("Failure to remedy a prior act of discrimination does not constitute a new act of discrimination for the purpose of determining whether a claim is time barred."); *Martin v. Sw. Va. Gas Co.,* 135 F.3d 307, 310 (4th Cir.1998) (concluding that employer's refusal to consider the plaintiff's request for accommodation was merely a consequence of employer's previous decision to discharge the plaintiff and did not give rise to a separate cause of action accruing after effective date of ADA); *Soignier v. Am. Bd. of Plastic Surgery,* 92 F.3d 547, 551–52 (7th Cir.1996) (holding that ADA claim accrued when the Board refused to offer the examination at issue in a manner accessible to the plaintiff, and not when

the Board later denied the plaintiff's request for retesting or when the Board subsequently unfavorably resolved the plaintiff's internal appeal).

That the Termination Letter stated that Allen would be terminated on March 12, 2022 "in the absence of any changed circumstances or any need for additional accommodations," ECF No. 15-5, PageID.310, does not toll or restart the limitations period. *See Gray v. Allstate Ins. Co.*, No. 1:03-CV-910, 2005 WL 2372845, at *3–4 (S.D. Ohio Sept. 26, 2005) (rejecting plaintiff's contention that a termination letter's "strong suggestion that Defendant would search for an alternate position for Plaintiff within the organization" does not take his case outside the general rule that the statute of limitations began to run when the plaintiff learned of the impending adverse employment action, "regardless of when the action took effect"); *see also Janikowski*, 823 F.2d at 947 (holding that the expressed possibility of continued employment in a different position did not prevent the commencement of the limitations period, and "plaintiff's search for other employment with [defendant] was an attempt to avoid the consequences of the termination"). Simply put, the case law has held that "[r]epeated requests for further relief from a prior act of discrimination will not set the time limitations running anew." *Janikowski*, 823 F.2d at 948 (quoting *EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1237 (6th Cir. 1980)).

Accordingly, Allen failed to file a charge of discrimination with the EEOC within 300 days of the alleged discrimination on February 7, 2022. For this reason her Amended Complaint will be **DISMISSED**.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 14, will be **GRANTED** and Plaintiff's Amended Complaint will be **DISMISSED.**

This is a final order that closes the case.

**IT IS SO ORDERED.**

Dated: August 31, 2026

/s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE